IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| SHAWANNA BOYD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO. 3:16-cv-546-CDL-TFM |
| | ) | |
| RANDOLPH COUNTY BOARD | ) | |
| OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.      INTRODUCTION

Plaintiff, Shawanna Boyd, Principal of Wedowee Elementary School within the Randolph County School System, ("RCS") brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII") and 42 U.S.C. § 1981, against her employer, the Randolph County Board of Education ("the Board") alleging that she was discriminated against on the basis of her race (black) when she was denied promotions and that she was retaliated against for filing a charge of discrimination with the EEOC.  This court has jurisdiction of Boyd's discrimination claims pursuant to the jurisdictional grant in 42 U.S.C. § 2000e-5.   Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law.  (Doc. 13).

Now pending before the Court is Defendant's Motion for Summary Judgment (Doc. 23), Supporting Brief (Doc. 25), Evidentiary Submission (Doc. 24), Plaintiff's Response to the Motion (Doc. 35) and Evidentiary Submission (Doc. 32) and Defendants' Reply Brief (Doc. 39). The Court has carefully reviewed the motion for summary judgment, the briefs filed in support of and in opposition to the motion, and the supporting and opposing evidentiary materials. For good cause, it is the **RECOMMENDATION** of the Magistrate Judge that Defendant's Motion for Summary Judgment (Doc. 23) be **GRANTED**.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Jeffery v Sarasota White Sox, Inc.,* 64 F.3d 590, 593 (11th Cir. 1995); *Edwards v. Wallace Cmty Coll.,* 49 F.3d 1517, 1521 (11th Cir. 1995). The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element of his claims, and on which he bears the burden of proof at trial. *Id.* To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e).

The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir. 1987). It is substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986); *See also DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir. 1989).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues. All the evidence and the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990). *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983).

The summary judgment rule is to be applied in employment discrimination cases as in any other case. *Chapman v. Al Transport,* 229 F. 3d 1012, 10126 (11th Cir. 2000) (en banc).

## III.   FACTUAL AND PROCEDURAL HISTORY

In its brief, the Board sets out a statement of alleged undisputed facts (Doc. 25 pp. 2-14) to which Plaintiff filed a response challenging certain of these facts (Doc. 35 pp. 1-3) and added a statement of additional relevant, material facts. (Doc. 35 pp. 3-20). In

Defendant's reply brief, they respond to certain of the Plaintiff's additional facts.  (Doc. 39 pp. 8-9).  The Court accepts as undisputed the facts to which both Plaintiff and Defendant agree and construes those facts, which are not clearly undisputed, in the light most favorable to the nonmovant.  The submissions of the parties set forth the following facts.

**Plaintiff's Educational and Employment Background**

Plaintiff is the Principal at Wedowee Elementary School in the Randolph County Schools. ("RCS").  She had a two-year contract that ended in May 2012 and then a five year contract that was scheduled to end in May 2017.  Because she was not evaluated each year during her recent contract, the contract automatically extended for two years.  (Boyd Depo. Doc. 24-1 pp. 148:13-149:2).   Plaintiff has a Bachelor's of Science in Early Childhood Education, a Master's of Science in Elementary Education, an Educational Administration endorsement, and a Doctor of Education in Educational Leadership. Plaintiff does not have a certification or a degree in Special Education. (Boyd Depo. Doc. 24-1, Ex. 1 p. 86).

 Before coming to Randolph County Schools, Plaintiff taught special education for one year and fourth grade for two years at Handley Middle School in Roanoke, Alabama. During the year, when Plaintiff taught special education at Handley, she taught gifted students with exceptional education levels, eighth grade students who were included in general education classes but needed special services, and students who had both intellectual and physical disabilities in grades K-12. In these teaching roles, Plaintiff participated in determining eligibility for special education students, communicated with

parents, students and advocates and learned about the laws and mandates relating to special education. Also, in Plaintiff's current role as Principal she monitors the progress of all students, including the performance of special education students, and evaluates the special education teachers under her supervision. (Boyd Affid. Doc. 31-1¶¶ 9-12). She also taught first grade for three years at Oxford Elementary School in Oxford, Alabama. Her other full-time jobs included being a mentor/trainer with the Family Child Care Partnership at Auburn University and running her own daycare. (Boyd Depo. Doc. 24-1 Ex. 1 pp. 87-88).

**RCS Hiring Process**

The process to fill a job in RCS begins with the posting of a vacancy. RCS is governed by the terms of a Consent Decree in *Lee v. Randolph County Board of Education,* 3:70-cv-847-MHT, which prescribes the use of an Employment Committee to screen, interview and recommend applicants. (Doc. 31-5; 3:70-cv-847-MHT, Doc. 312). Pam Johnson, Employment Committee member, generally explained the RCS hiring process by affidavit s*ee* (Doc. 24-2 at ¶¶ 3-10) and in her deposition (Doc. 31-3), as follows:

The Employment Committee reviews and evaluates applications, selects applicants to be interviewed, reviews hiring recommendations by the local school committee and otherwise advises the Superintendent on hiring matters. The Human Resources Coordinator ("HR Coordinator") reviews the applications and sets up folders containing each candidate's application and any prior applications with RCS. The applicants' folders are provided by the HR Coordinator to the standing three member Employment Committee.

A list is provided to the Employment Committee containing the names of individuals who have been scored within the last 36 months, but have not applied for the position.  This list includes the individuals' previous rubric scores.  (Johnson Depo. Doc. 31-3 p. 50:7-17).

The Employment Committee reviews the folders and numerically rates each applicant based on their experience and education. If the Employment Committee has recently considered the applicant, it will review the prior rating and confirm that nothing has changed or conduct a new rating.   However, for those individuals whose names are on the 36 month list, but have not applied for the position for which the Employment Committee is considering applicants, their rubrics are not rescored and their folders are not provided to the Employment Committee.  (Johnson Depo. Doc. 31-3 p. 50:7-17).

After the rating, the Employment Committee selects an equal number of black and white candidates to interview.  The Employment Committee compiles questions for the interview, utilizing those available through national data banks.  (Johnson Depo. Doc. 31-3 pp. 33:6 – 34:21; 36: 1-15).  The Employment Committee then interviews candidates and receives writing samples from each candidate.  The Employment Committee asks every candidate the same questions and makes notes of the responses.  After each interview, they discuss the candidate's strengths and weaknesses.  At the end of all the interviews, they look at the writing samples and talk about the candidates again.  At the end of all of the interviews and reviews of writing samples, each member of the Employment Committee ranks the candidates.  The Employment Committee then recommends three candidates to the Superintendent based on the rankings.  They submit a Summary Rationale Form

explaining who they are recommending and why.  The Superintendent selects a candidate for hire from that list of three.  (Defendant's Brief, Doc. 25 pp. 3-4 ¶¶ 9-13.)[1]

**Hiring the Special Education Coordinator in 2015**

**First Job Posting**

On March 23, 2015, the Board posted a vacancy for the Coordinator for Special Education.  Per the job description, the qualifications were "a minimum of a Master's Degree from an accredited institution in Special Education and Class A certification in administration/supervision." (Complaint, Doc. 1-4 pp. 3-4).  The Employment Committee[2] reviewed all the folders supplied by the HR Coordinator and selected candidates to interview.  Plaintiff was not among the candidates to be interviewed.  Pursuant to the Consent Decree, since Plaintiff had applied for a position in RCS within 36 months prior to the interview process for the Special Education Coordinator, she should have automatically been considered for the position.  (Johnson Depo. 31-3 p. 85).  However, the HR Coordinator did not provide the Employment Committee with Plaintiff's application and they did not know she was interested in the position.  (Johnson Depo. 31-3 p. 84:9-15).

Thereafter, Plaintiff contacted a member of the Employment Committee to ask why she and one of her employees were not being interviewed.  The Employment Committee revised its interview schedule and interviewed six candidates: three black candidates, including Plaintiff, and three white candidates.  Following the interviews and review of

---

[1]  Paragraphs 9-13 are undisputed by Plaintiff.  (Plaintiff's Brief, Doc. 35  p.2)
[2]  At the time of hiring the Special Education Coordinator in 2015, the Employment Committee included Pam Johnson (white), Ellie Cotney (white), and Rosie O'Neal (black).

each candidate's writing sample, on May 1, 2015, the Employment Committee submitted a Summary Rationale Form, recommending three candidates for employment in the following order of preference: May (black), Head (white) and Brannon (white). (Johnson Affid. Doc. 24-2 ¶ 16; Ex. B at p. 12).

Plaintiff testified that the interview was casual, informal, and not related to the job qualifications. Plaintiff felt as though she were there out of courtesy. (Boyd Depo. Doc. 24-1 at pp. 69:19-71:2). Plaintiff was not asked questions that related to the job description or qualifications about special education. (Boyd Depo. Doc. 24-1; Ex.1 p. 79:3-80:1). The Employment Committee was not aware of Plaintiff's experience in special education. (Johnson Depo. 31-3 pp. 95:12-96:13).

 The Employment Committee did not recommend Plaintiff for the position because she was not "certified" in Special Education. The Committee recommended May (black), Head (white) and Brannon (white). The three candidates the Employment Committee recommended were certified in both special education and administration. (Johnson Affid. Doc. 24-2 at ¶¶ 18-19, Ex. B). Plaintiff disputes that a "certification in special education was a qualification required for this position." (Doc. 35 at ¶ 23). However, it is undisputed both job descriptions state that at a minimum a Master's Degree in Special Education is required. (Complaint, Doc 1-4 pp. 3-4; Doc. 1-5 pp. 3-4). It is also undisputed that Plaintiff had neither a Master's Degree in Special Education, nor a Certification in Special Education. (Boyd Depo. Doc. 24-1; Ex.1 p. 86).

After the Employment Committee chose their top three candidates and gave them to Superintendent Kirby, he decided to implement a second committee made up of special education teachers for a second round of interviews. (Kirby Depo. Doc. 31-2 at pp. 56:6-57:8).[3] The second committee, the Special Education Committee, then interviewed May, Head, and Brannon. The Special Education Committee was made up of the outgoing Coordinator of Special Education, Lemoyne Apostle (white), and two experienced special education teachers in the RCS system, Brooke Laney (white) and Janice Slaughter (black). The members of the Special Education Committee did not know that Plaintiff had applied for the position.

The Special Education Committee interviewed all three candidates and had each of them complete special education paperwork that they considered important to the position. After the interviews and review of the sample paperwork, the Committee concluded that no candidate was up to the standard required for the position. The Committee recommended that the Board revise the qualifications for the position to attract more candidates with broader knowledge of Special Education. (Apostle Affid. Doc. 24-3 ¶¶5-7, Exs. A, B). Apostle stated the Special Education Committee felt it was important for RCS to hire someone who was familiar with the State's special education paperwork and that none of the candidates they interviewed demonstrated that kind of skill or knowledge. As a result, they thought it was more important to get candidates who had experience as

---

[3] Plaintiff testified that a special committee for a second round of interviews had never before been implemented in Randolph County Schools and has not been used since this instance. (Boyd Affid. Doc. 31-1 ¶ 15).

special education teachers even if they did not have a certification in administration/supervision.  *Id.* at ¶ 6.

**Second Job Posting**

On May 19, 2015, Superintendent Kirby recommended to the Board that it authorize him to revise the job description for Coordinator of Special Education.[4]  The Board voted in favor of that recommendation. (Jacobs Affid. Doc. 24-4 at ¶10).  On May 22, 2015, the Board again posted a vacancy for Coordinator of Special Education with the revised job description.  It required experience in Special Education in both teaching and supervising and knowledge concerning special education laws, process and the computer tracking system.  Again, it required a minimum of a Master's Degree in Special Education, but did not require a Certification in Administration/Supervision. (Complaint, Doc.  1-5 pp. 3-4).

The Employment Committee again reviewed folders of applicants and interviewed six candidates, including three black candidates and three white candidates.  The Committee did not select Plaintiff to interview because she did not have a Master's Degree in Special Education.  (Johnson Affid. Doc. 24-2 at ¶¶ 23, 26).  As a result of her lacking this certification, Plaintiff received a .2 on the rubric as set forth by the Consent Decree which further directs no interview be given in this situation.  (Johnson Depo. Doc. 31-3 pp. 86:4-23 and 87:1-8).[5]

---

[4]  Plaintiff states that in the past when a job description was created or revised, the policy committee, made up of principals, was consulted.  This was not done in this instance.  (Boyd Affid. Doc.31-1 ¶16).

[5]  Again, Plaintiff argues that she was not selected because she lacked a "certification" in Special Education.  (Plaintiff's Brief, Doc. 35 at ¶ 28.)

The Employment Committee asked each candidate the same questions and reviewed their writing samples.  At the end of the process, on June 12, 2015, the Special Education Committee recommended three candidates in the following order of preference:  Beth Bailey, (white), Demetria Harvell, (black), Karen McMath, (white).  The Special Education Committee interviewed Bailey, Harvell and McMath and had each candidate answer the same questions and complete the same paperwork that they had used in the prior process.  Plaintiff claims that the Special Education Committee did not provide rationale or summaries for why they recommended Bailey.  (Doc. 35 ¶ 32).  Indeed, the Court finds in the record no Summary Rationale Form for the Special Education Committee.  However, the record includes a June 16, 2015, letter from the Special Education Committee to the Board, which sets forth its reasoning for recommending Bailey. (Apostle Affid. Doc. 24-3 Ex. B.).

In recommending Bailey for the position, the Special Education Committee wrote:

> The committee feels that Mrs. Bailey is the best candidate for the job for the following reasons.  Mrs. Bailey has worked with the Randolph County schools for 15 years.  She has experienced 5 state department special education monitoring cycles during this time. Mrs. Bailey is familiar with what the state department expects of special education in Randolph County regarding what they call "compliance."
>
> As a Speech Language Pathologist, Mrs. Bailey has traveled from school to school, and she has developed a rapport with staff and parents alike. . .  She helps teachers of students with an intellectual disability to complete the Alabama Alternative Assessment of their Students.  Mrs. Bailey is also the Randolph County representative for the state Autism Initiative.

(Apostle Affid. Doc. 24-3 Ex. B.). Qualifications, taking into account experience in the area of special education, were included in the May 22, 2015 job posting, but were not

included in the March 23, 2015 job posting. (Complaint, Doc. 1-4 pp. 3-4; *compare* Doc. 1-5 pp. 3-4).  During interviews conducted pursuant to the May 22, 2015 job posting, the Employment Committee "thoroughly combed" applications and files looking for "massive special education experience."   (Johnson Depo. Doc. 31-3 pp. 99:19-23; 100:1-19). Apostle further states the Committee recognized that all three candidates had strengths, but considered Bailey the strongest candidate.  (Apostle Affid. Doc. 24-3 ¶ 10).  On June 16, 2015, Kirby recommended that the Board vote to hire Bailey as the Coordinator of Special Education.  (Jacobs Affid. Doc. 24-4 ¶ 12).

**Hiring the Curriculum Coordinator in 2015**

On May 22, 2015, RCS posted a Notice of Vacancy for Curriculum Coordinator. The qualifications for this position were as follows:

1. Class A Alabama Administrator Certificate
2. Endorsement/Experience in School Counseling Preferred
3. Not less than 3 years verified teaching experience.

(Jacobs Affid. 24-4 pp. 35-37 Ex. F).  The Employment Committee invited six candidates to interview, three black, including Plaintiff and three white.  Following the interviews and review of writing samples, the Employment Committee recommended three candidates for hire in the following order of preference: Antwauan Stinson (black), Jennifer Braden (white), and Plaintiff.  (Johnson Affid. Doc. 24-2 at ¶ 28, Exh. E). In the Summary Rationale Form the Committee stated as follows:

> Dr. Stinson {sic}by far the most qualified person we have interviewed.  He has a vast knowledge of curriculum and instruction.  He is Math and Science certified which would be a huge asset to our system to have someone who is highly qualified in those areas who has worked with Teacher Education

> preparation.  He has extensive experience in working with helping with
> technology instruction in the classroom.  He has experience in grant writing
> that would be a huge benefit to our system.  The committee unanimously
> chooses Dr. Stinson for Curriculum Coordinator.  The committee was not all
> in agreement with the 3rd candidate.

*Id.*  By Affidavit, Johnson, testified that the Committee believed that Stinson and Braden

"demonstrated a broader understanding of and vision for the Curriculum Coordinator job

during their interviews than Plaintiff" and also "submitted better writing samples."

(Johnson Affid. Doc. 24-2 at ¶ 29, Exh. F).[6]  She further states that the Employment

Committee did not consider Plaintiff's race or any prior complaints in making their

recommendation.   (Johnson Affid. Doc. 24-2 at ¶ 30).   On July 16, 2015, Kirby

recommended and the Board voted to hire Braden as the Curriculum Coordinator.  (Jacobs

Affid. Doc. 24-4 at ¶ 15 Ex. G).  No explanation is given for Kirby's recommendation to

the Board to hire Braden, who was recommended behind Stinson.

However, Plaintiff does not dispute that Braden met the qualifications listed in the

job posting.  Indeed, Braden has a Bachelor of Arts in Political Science, a Master's Degree

in Education, along with various certifications, including Instructional Leadership.  She

had been a Principal at Rock Mills Junior High School (2012-2015), an Assistant Principal

in other school systems (2004-09), a classroom teacher for another system (1996-2004),

and a media specialist at Rock Mills Junior High School (2009-2012).  (Jacobs Affid. Doc.

24-4 Ex. H pp. 44-47).

---

[6]Plaintiff argues that because Johnson's Affidavit testimony is not the same rationale contained in the
Summary Rationale Form that the Affidavit testimony is not evidence of what the Employment Committee
"believed".  (Plaintiff's Brief, Doc. 35 ¶ 36).

**Plaintiff's Retaliation Claims**

In July 2015, Plaintiff filed a Grievance with the Board alleging that she had been discriminated against because of her race due to the Board's failure to promote her to Special Education Coordinator. (Boyd Depo. Doc 24-1 Ex.3 pp. 91-96). Around the same time, she also filed complaints with the Office of Civil Rights and the Equal Employment Opportunity Commission. (Boyd Depo. Doc. 24-1 pp. 123:11-124:5). Plaintiff's EEOC charge was made formal and signed on September 7, 2015. (Boyd Depo. Doc. 24-1 p. 109 Ex. 13). Plaintiff alleges that she has been retaliated against in a number of ways since she made her complaints. The specific facts related to these incidents are stated hereafter.

### August 2015 Communications with Saulsberry

Plaintiff claims that she received a reprimand letter dated August 12, 2015, from Sherry Saulsberry, the HR Coordinator, in retaliation for her protected activities. Indeed, Saulsberry sent Plaintiff a letter concerning Plaintiff taking lunch off campus during the first week of school and leaving her school unattended. In the letter, Saulsberry told Plaintiff that the "Board . . . does not condone leaving classrooms or schools unsupervised." The letter further required thereafter that Plaintiff notify the Human Resources office of her travels outside of Wedowee, Alabama during school hours. (Boyd Depo. Doc. 24-1 Ex. 6). In a "Rebuttal" letter, Plaintiff acknowledged that she agreed with the policy requiring her to be present at school during school hours. She argued, however, that she was not allowed to explain her absence and requested an Assistant Principal be assigned to her so

that she could leave on school business during the school hours.  (Boyd Depo. Doc. 24-1, Ex. 7).

### August 2015 Communications with Kirby

Plaintiff claims that she received reprimand letters from Rance Kirby, former Superintendent of Randolph County Schools, in retaliation for her protected activities. Indeed, Kirby sent Plaintiff a letter, dated August 17, 2015, concerning what he characterized as an "unfortunate meeting" between them on August 10, 2015 involving a staffing issue at Plaintiff's school.  In the letter, Kirby counseled Plaintiff about her manner of requesting a meeting with him and described Plaintiff's manner as "aggressive" and "uncooperative".  He further stated that he had "no problem" discussing any matter with Plaintiff "when it is done in a timely, professional, and respectful way."  (Boyd Depo. Doc. 24-1, Ex. 9).   Plaintiff explained in a September 1, 2015 Rebuttal letter that her "urgent" request was because the Physical Education teacher was supervising more than 60 students alone since no one from the Randolph County High School showed up to assist.  (Boyd Depo. Doc. 24-1, Ex. 10).

In a letter, dated August 18, 2015, Kirby admonished Plaintiff for suspending a Pre-K student for reasons not permitted by the "Office of School Readiness Program Guidelines for 2015- 2016."   The letter stated that the Guidelines allowed suspension only in "emergency situations" and Plaintiff suspended this Pre-K student because the father was fifteen minutes late to pick-up the child. In closing Kirby stated "I trust and expect that in the future better judgment will be shown in addressing such situations."  (Boyd Depo. Doc.

24-1, Ex. 11).  Plaintiff defended her action in a Rebuttal letter, dated September 2, 2015, arguing this was an emergency situation because this parent's tardiness put the "Pre-K students (4 year old) in an unsafe environment because there are buses arriving, older students dismissing, and car rider parents for older students arriving, and limited adult supervision."  (Boyd Depo. Doc. 24-1, Ex. 12).

The parties dispute the effect the Saulsberry and Kirby letters had on Plaintiff's employment.  Defendant states that these letters were not made a part of Plaintiff's personnel file and had no effect on her status in the school system, her pay or the terms and conditions of her employment.  (Jacobs Affid. Doc. 24-4 ¶19).  Plaintiff disputes that fact because these letters were kept on file in the central office and were delivered to her personally by the HR Director.  (Kirby Depo. Doc. 31-2 pp. 107:22-108:14; 110:3-10). Plaintiff states that prior to filing a discrimination claim, she had never received a reprimand letter from Kirby.  (Boyd Depo. Doc. 24-1 at pp. 225:22-226:15).

**Employee Improvement Plan**

Plaintiff claims that she was made to follow an Employee Improvement Plan in retaliation for her protected activities.  (Boyd Depo. Doc. 24-1, Ex. 8).  In late August, Kirby and Saulsberry talked to Boyd about an Employee Improvement Plan and required her to attend training for new supervisors.  (Boyd Depo. Doc. 24-1 pp. 138:5-142:9). Plaintiff found the training insulting because she was not a new supervisor and was the only Principal required to go.  (Boyd Depo. Doc. 24-1 pp. 138:5-139:1). The Employee Improvement Plan, which is unsigned, sets out expectations for Plaintiff as follows:

1.  Work collaboratively with staff (school and central office).
2.  Meet timelines related to referrals, reevaluations, testing, IEP development, IEP implementation or any other timelines enumerated in the Alabama Administrative Code as it relates to your duties as principal/instructional leader.
3.  Hold and document required meetings (RTI, EL, etc.).
4.  Obtain immediate supervisor's permission before leaving campus.
5.  Perform ALL duties in a satisfactory manner.
6.  Follow board policy and/or state guidelines.
7.  Demonstrate professionalism toward superintendent, central office staff, parents, faculty, students, and any other school stakeholders.
8.  Provide current and accurate documentation upon request.
9.  Adhere to established code of ethics for professional educators.
10.  Adhere to any and all central office directives related to Randolph County schools.

(Boyd Depo. Doc. 24-1, Ex. 10).[7]  This Employee Improvement Plan was the only such plan that Kirby ever implemented for any other administrator in his tenure as superintendent.  (Kirby Depo. Doc. 31-2 pp. 122:16-123:1).  Failure by employee to follow plan could possibly result in "anything from suspension with pay to termination."  (Kirby Depo. Doc. 31-2 pp. 30:1-31:21).   Additionally, Plaintiff states that prior to filing a discrimination claim, she had never received an employee improvement plan from Kirby. (Boyd Depo. Doc. 24-1 at pp. 226:4-226:7).

**Removal from Pre-K Director Position**

Plaintiff claims that the August 18, 2015 letter from Kirby and her subsequent removal from the Pre-K Director Position were in retaliation for her protected activities.

---

[7]  The parties  dispute the effect this document had on her employment.  Defendant states that the Employee Improvement Plan was not made a part of Plaintiff's personnel file and had no effect on her status in the school system, her pay or the terms and conditions of her employment. (Jacobs Affid. Doc. 24-4 ¶19).  Plaintiff disputes that fact because the document was kept on file in the central office and it was delivered to her personally by the HR Director. (Kirby Depo. Doc. 31-2 pp. 107:22-108:14: 110:3-10).

(Boyd Depo. Doc. 24-1, Ex. 11).  From 2014 to 2015, Plaintiff served as Director for a Pre-K program funded by a grant. (Boyd Depo. Doc. 24-1 pp. 27:1-28-6).  She did not receive any additional compensation for her work on the grant that year. (Boyd Depo. Doc. 24-1 p. 30:4-7).  In this capacity, Plaintiff was responsible for writing the grant and securing the funds to operate a Pre-K program at Wedowee Middle School.  Plaintiff was also responsible for hiring Pre-K staff, promoting enrollment for the Pre-K program, and maintaining the waitlist for the program.  (Boyd Affid. Doc. 31-1¶6).  However, Plaintiff received no additional pay for her duties as Director.  (Jacobs Affid. Doc. 24-4 ¶19).  When Plaintiff wrote the grant for the 2015-2016 school year, she included within the budget $10,000.00 as compensation for the Director of the program.  (Boyd Affid. Doc. 31-1¶7).

Saulsberry, the HR Coordinator, replaced Plaintiff as Director. (Boyd Depo. Doc. 24-1 pp. 29:20-30:3).  Currently, Jennifer Braden, the Curriculum Coordinator, performs the Director duties and receives no extra pay for it. (Jacobs Affid. Doc. 24-4 ¶18).  In 2017, Jacobs offered the Pre-K Director position to Plaintiff.   The parties dispute whether Plaintiff declined the job. (Boyd Depo. Doc. 24-1; 125:14-127:14) (Jacobs Affid. Doc. 24-4 ¶18).  Plaintiff states that she had questions about the budget that she wanted answered before she could accept the position and that Jacobs made the decision to give the job to someone else before her questions were answered.   (Boyd Depo. Doc. 24-1; 125:14-127:14).

### Failure to Extend a Five-Year Contract

Plaintiff claims that in the summer of 2016, Kirby offered all of the other RCS principals five-year employment contracts and that she was not offered one in retaliation for her protected activities.  (Boyd Depo. Doc. 24-1; 147:10-148:12).  Jacobs testified that the Board approved five-year contracts for five principals in July and August of 2016.  (Jacobs Affid, Doc. 24-4 ¶ 20).  Neither Plaintiff, nor Darren Angline, the white male Principal at Randolph County High School were offered new contracts.  (Jacobs Affid. Doc. 24-4 ¶ 20).

### Exclusion from Hiring Decisions

Plaintiff claims that Jacobs excluded her from decisions in retaliation for her protected activities.  (Boyd Depo. Doc. 24-1; 152:9-14).  Plaintiff states that during the summer of 2016 she was excluded from the process of hiring Jeremiah Thomas, a physical education teacher, who split his time between her school and Rock Mills Junior High.  (Boyd Depo. Doc. 24-1; 168:5-169:5).  The Principal at Rock Mills Junior High, was involved in the interviewing and hiring of Thomas.  (Boyd Depo. Doc. 24-1; 168:5-169:5).  Also, in the spring of 2017, Plaintiff states that she was excluded from a conversation in which Jacobs and the Principal at Wadley High School attempted to recruit one of Plaintiff's black teachers to Wadley.  (Boyd Depo. Doc. 24-1; 152:9-154:11).  Jacobs admits that he did ask Briskey, outside of the Plaintiff's company, if she would be interested in transferring to Wadley High school from Wedowee Elementary because Wadley was closer to her home. Briskey replied she was not interested and the conversation

ended.  Jacobs testified that he did not involve Plaintiff in the conversation because Briskey

was not interested.  (Jacobs Affid, Doc. 24-4 ¶ 26).

**Human Resources Director Position**

Plaintiff also claims that she was denied the HR Coordinator position in retaliation

for her complaints.  (Boyd Depo. Doc. 24-1 p. 149:3-6).  RCS posted a Notice of Vacancy

for the HR Coordinator position on November 18, 2016. (Jacobs Affid, Doc. 24-4 ¶ 21 Ex.

I).   The qualifications for the job included the following:

1. A minimum of a Master's Degree is required.
2. Valid Alabama Department of Education certification in administration.
3. Three years of administrative or supervisory experience.
4. Possess valid Alabama driver's license and access to appropriate vehicle.

(Jacobs Affid. Doc. 24-4 Ex. I at pp. 50-52).

The Employment Committee reviewed the folders and selected candidates to

interview – three black, including Plaintiff, and three white.  (Johnson Affid. Doc.  24-2 ¶

31 Ex. G).   Following interviews and reviews of the candidates' writing samples, the

Employment Committee recommended the following candidates in order of preference:

Mary Kelly (white), Jeff Thompson (white) and Plaintiff.   (Johnson Affid. Doc.  24-2 ¶ 32

Ex. G).   Johnson testified by affidavit that the Employment Committee recommended

Kelly ahead of Plaintiff, in part, because she had performed the HR Coordinator job before.

(Johnson Affid. Doc.  24-2 ¶ 33).   Further, the Employment committee noted that "[t]he

board requested she [Boyd] be in the top 3", but that "[t]"he committee felt that Dr. Boyd

was not a fit for this particular position.  She has a passion for students." (Johnson Affid.

Doc.  24-2; Ex. G).

Plaintiff claims that Superintendent Kirby told her that he would recommend her for this position. (Boyd Depo. Doc. 24-1; 149:15-22). However, Kirby never made any recommendation to the Board about the HR coordinator position. He left office at the end of December 2016 and Jacobs, the newly elected Superintendent, took office in 2017. (Jacobs Affid, Doc. 24-4 ¶ 22). Jacobs followed the Employment Committee's recommendation and recommended Kelly for the HR Position on January 11, 2017. (Jacobs Affid, Doc. 24-4 ¶ 23). The Board voted to hire Kelly. (Jacobs Affid, Doc. 24-4 ¶ 23, Ex. J.) Jacobs testified by affidavit that he did not consider Plaintiff's race or any protected activity in making his recommendation; instead he followed the Employment Committee's recommendation. (Jacobs Affid, Doc. 24-4 ¶ 23). Plaintiff does not dispute that Kelly is qualified for the position.

## IV.   DISCUSSION

Plaintiff brings claims under Title VII and 42 U.S.C. § 1981 Claims for Race Discrimination[8] and Retaliation. To show that a defendant acted with discriminatory purpose – a Plaintiff must present either (1) statistical proof of a pattern of discrimination, (2) direct evidence of discrimination, (3) or by circumstantial evidence using the framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-804 (1973). *See Holifield v. Reno*, 115 F. 3d 1555, 1561-62 (11th Cir. 1997). The Eleventh Circuit has defined direct evidence as "actions or statements of an employer reflect[ing] a

---

[8] "The elements of a claim of race discrimination under 42 U.S.C. § 1981 are also the same as a Title VII disparate treatment claim in the employment context." *Rice-Lamar v. City of Fort Lauderdale,* 232 F. 3d 836, 843 n.11 (11th Cir. 2000).

discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee."  Further "[e]vidence that only suggests discrimination . . . , or that is subject to more than one interpretation . . . does not constitute direct evidence." *Merritt v. Dillard Paper, Co.,* 120 F. 3d 1181, 1189 (11th Cir. 1997).  (Citations omitted).

Under the *McDonnell Douglas* burden shifting framework of Title VII, generally a Plaintiff must first establish a prima facie case of discrimination; if she does, then the employer must demonstrate "some legitimate, nondiscriminatory reason" for its employment decision.  If the employer satisfies its burden, "the presumption raised by the prima facie case is rebutted."  Because the burden of persuasion remains with the employee, the plaintiff must demonstrate that the seemingly legitimate reason given by the employee was pretextual.   However, if the employer satisfies its burden "the presumption of discrimination 'drops from the case' and the framework shifts back to placing the burden on the plaintiff to prove "more probably than not, that the employer took an adverse employment action against [her] on the basis of a protected personal characteristic.'" *Kidd v. Mando American Corp.,* 731 F.3d 1196, 1202 (11th Cir. 2013) (Citations omitted.)  The court will now address each of these claims separately below.

### A.  RACE DISCRIMINATION

Plaintiff alleges that she was discriminated against when the Board failed to hire her to the positions of Special Education Coordinator and Curriculum Coordinator in 2015.  To establish a *prima facie* case for disparate treatment in a race discrimination case, Plaintiff must demonstrate that (1) she is member of a protected class; (2) she was subjected to an

adverse employment action; (3) her employer treated similarly situated employees outside her protected class more favorably than she was treated; and (4) she was qualified to do the job.  *See Burke-Fowler v. Orange County,* 447 F.3d 1319, 1323 (11th Cir. 2006).  To survive summary judgment, Plaintiff must demonstrate a genuine issue of material fact with respect to each element.  *Kinnon v. Arcoub, Gopman & Assocs. Inc.,* 490 F. 3d 886, 891 (11th Cir. 2007).

### 1.  Position of Special Education Coordinator

Defendant argues that summary judgment is due to be granted on Plaintiff's claim that the Board discriminated against her when it failed to hire her to the position of Special Education Coordinator because she was not qualified for the position.  *Burke-Fowler,* 447 F.3d at 1323.  It is undisputed that a Master's Degree from an accredited institution in Special Education was required for the position under both job postings.  *See* Complaint; March 23, 2015 Job posting (Doc. 1-4 at p.4) and May 22, 2015 Job posting (Doc. 1-5 at p. 4).  Further, the undisputed evidence before the Court demonstrates that Plaintiff does not have a Master's Degree from an accredited institution in Special Education, nor does she have a certification in Special Education. (Boyd Depo. Doc. 24-1, Ex.1 at p. 86).  The Employment Committee reported that it did not recommend Plaintiff for this position under either posting because Plaintiff did not have the required qualifications.  (Johnson Affid. Doc. 24-2 at ¶¶ 18-19, 23, 26 Ex. B).

Plaintiff argues that the reason the Employment Committee did not recommend Plaintiff for this position was because she was not "certified" in Special Education.

(Johnson Affid. Doc. 24-2 at ¶¶ 12-13 Ex. B).  Since a "certification" was not required in the Job postings, Plaintiff argues that this is evidence of discrimination.  The Court recognizes that the Employment Committee explained its decision not to hire Plaintiff using the word "certified" in some instances.  However, this argument offers no factual support for Plaintiff's burden of establishing a prima facie case.  *Burke-Fowler,* 447 F.3d at 1323. Indeed, the only evidence before the Court demonstrates Plaintiff had neither a degree nor a certification in Special Education. (Boyd Depo. Doc. 24-1, Ex.1 at p. 86).

 Rather, Plaintiff's argument asks the Court to disregard the qualification requirements for this position and to relieve Plaintiff of her burden of demonstrating that she was qualified for the position of Special Education Coordinator.  (Boyd Depo. Doc. 24-1, Ex.1 at p. 86); *Celotex,* 477 U.S at 322.  The law does not permit this, and the evidence in this case does not support a finding that Plaintiff was qualified for the position. Accordingly, the Court concludes there is no genuine issue of material fact about whether Plaintiff was qualified for the position of Special Education Coordinator and the Defendant's Motion for Summary Judgment is due be granted on this claim. *See*, *Burke-Fowler,* 447 F.3d at 1323; *Celotex*, 477 U.S at 322.

### 2.  Position of Curriculum Coordinator

Defendant makes no argument that Plaintiff has not carried her burden on the prima facie case with respect to her discrimination claim involving the position of Curriculum Coordinator.  Rather, Defendant argues that Plaintiff's discrimination claim fails because

the Board hired someone that was "better qualified" than Plaintiff for this position.[9]
Plaintiff argues that the evidence does not support this reason because she and Braden "are
virtually indistinguishable from each other in the rationale form, except as to race." (Doc.
35 at p. 31). Rather, Plaintiff argues that Defendant manufactured this reason as a defense
to this lawsuit, and as such this reason is pretexual. *Kidd,* 731 F.3d at 1202.

Following the interviews and review of writing samples, the Employment
Committee recommended three candidates for hire in the following order of preference:
Antwauan Stinson (black), Jennifer Braden (white), and Plaintiff. (Johnson Affid. Doc.
24-2 at ¶ 28, Exh. E). In the Summary Rationale Form, the Committee cited numerous
reasons relating to Dr. Stinson's extensive qualifications for recommending Dr. Stinson for
the position. *Id.* The Committee recorded no reasons why Jennifer Braden was ranked
second ahead of Plaintiff. With respect to Plaintiff, the Summary Rationale Form stated
only that "[t]he committee was not all in agreement with the 3rd candidate". *Id.* Braden
was ultimately hired for the position. (Jacobs Affid. Doc. 24-4 at ¶ 15 Ex. G). However,
by affidavit, Johnson, testified the Committee believed that Stinson and Braden
"demonstrated a broader understanding of and vision for the Curriculum Coordinator job
during their interviews than Plaintiff" and also "submitted better writing samples."

---

[9] Plaintiff does not dispute that Braden met the qualifications listed in the job posting. Indeed,
Braden has a Bachelor of Arts in Political Science, a Master's degree in Education, along with
various certifications, including Instructional Leadership. She had been a Principal at Rock Mills
Junior High School (2012-2015), an Assistant Principal in other school systems (2004-09), a
classroom teacher for another system (1996-2004), and a media specialist at Rock Mills Junior
High School (2009-2012). (Jacobs Affid. Doc. 24-4 Ex. H pp. 44-47).

(Johnson Affid. Doc. 24-2 at ¶ 29, Exh. F).

Plaintiff argues that the lack of explanation in the Summary Rationale Form about the Committee's reasons for choosing to hire Braden over Plaintiff does not provide sufficient factual clarity and as such mandates the conclusion that the reason is not legitimate. However, the law is clear; Defendant's reasons, based on qualifications, for hiring another candidate over Plaintiff, is a "legitimate non-discriminatory reason." *Carter v. Three Springs Residential,* 132 F. 3d 635, 644 (11th Cir. 1998) (Reason examining qualifications is a "legitimate non-discriminatory reason" and the defendant carried its intermediate burden with supporting evidence.) In the instant case, Johnson's Affidavit is evidence adduced by the Defendant which supports this reason that Braden was "better qualified" than Plaintiff. Thus, the burden shifts back to Plaintiff to "produce evidence casting doubt" on Defendant's reasons. *Id.*

The Eleventh Circuit has stated that in determining pretext a court must consider all the evidence of record to determine whether Plaintiff "has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." *Crawford v. Carroll,* 529 F. 3d 961, 967 (11th Cir. 2008). In the instant case, Plaintiff argues that she has presented evidence of pretext based on the failure of the Committee to explain in the Summary Rationale Form reasons why Plaintiff, a black candidate, was ranked behind Braden, a white candidate. This argument alone fails to meet the Plaintiff's evidentiary burden to establish pretext. *See Carter,* 132 F. 3d at 644. Indeed,

since Plaintiff offers no evidence of pretext, Plaintiff fails to carry her burden under *McDonnell Douglas Corp,* 411 U.S. at 802-804.

Plaintiff also argues that the same lack of explanation is direct evidence of discrimination.  The Court disagrees. Direct evidence is defined as "actions or statements of an employer reflect[ing] a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee."  *Merritt,* 120 F. 3d at 1189. A lack of reasons for refusing to promote an employee does not equate to "actions or statements of an employer." *Id*.  Furthermore, lack of a more detailed statement in the Summary Rationale Form about the Committee's decision to hire someone other than Plaintiff is "subject to more than one interpretation." *Id.*  Accordingly, the Court concludes that the Defendant's Motion for Summary Judgment is due be granted on this claim. *See*, *Burke-Fowler,* 447 F.3d at 1323; *Celotex*, 477 U.S at 322.

## B. RETALIATION

Plaintiff alleges that she was retaliated against by the Board after she filed a racial discrimination claim with the Office of Civil Rights, an online EEOC claim and an internal grievance in July 2015.  The EEOC charge was made formal and signed on September 7, 2015.  Specifically, she claims that the Board retaliated against her as follows:

1) She received reprimand letters from Saulsberry and Kirby in August 2015;

2) She received an Employee Improvement Plan in August 2015;

3) She was removed from the Pre-K Director position in August 2015;

4) She was excluded from hiring decisions in the Spring of 2017;

27

5) She failed to receive an extension on a five-year contract in the Summer of 2016;

6) She was not hired to the Human Resources Director position in November 2016.

To set out a prima facie case for retaliation under Title VII, the plaintiff must show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Crawford,* 529 F. 3d at 970. To qualify as an "adverse employment action" the act must be "material and significant and not trivial." *Morales v. Ga. Dept. of Human Res.,* 446 Fed. Appx. 179, 183 (11th Cir. 2011) citing *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S. Ct 2405, 2415, 165 L.Ed.2d 345 (2006). Moreover, the proper test is whether the "conduct by the employer might deter a reasonable employee from pursuing a pending charge of discrimination or making a new one." *Crawford,* 529 F. 3d at 974.

Courts have construed the causation requirement "broadly, so that a plaintiff simply has to demonstrate that the protected activity and adverse action are not completely unrelated." *Morales,* 446 Fed. Appx. at 183. Further, a "close temporal proximity" between the protected expression and the adverse action maybe sufficient to create a question of material fact on this issue. *Id.* Indeed, to survive summary judgment on her retaliation claim, Plaintiff "need prove only that retaliatory animus was one factor in the adverse employment decision." *Brown v. Alabama Dept. of Transp.,* 597 F. 3d 1160, 1182 (11th Cir. 2010). The Court will now address each of Plaintiff's claims of retaliation.

**Letters from Saulsberry and Kirby in August 2015 and the Employee Improvement Plan in August 2015**;

Defendant argues that Plaintiff fails to make a prima facie case on her claims for retaliation based on the Saulsberry and Kirby letters in August 2015 (Boyd Depo. Doc. 24-1, Exs. 6, 9, 11) and the Employee Improvement Plan received by Plaintiff in August 2015 (Boyd Depo. Doc. 24-1, Ex. 9) because these are not adverse employment actions. *See Davis v. Town of Lake Park, Fla.,* 245 F.3d 1232, 1240 (11th Cir. 2001) (Negative job performance memoranda not adverse employment actions). Indeed, "[a]n employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment." *Shotz v. City of Plantation, Fla.,* 344 F. 3d 1161, 1182 (11th Cir. 2003); *Crawford,* 529 F. 3d at 974 (Unfavorable performance review which affected Plaintiff's eligibility for a merit pay increase was adverse employment action).

Plaintiff argues that these documents rise to the level of an adverse employment action because they require Plaintiff to change her behavior in some ways. On the other hand, Defendant argues that these documents are not adverse employment actions because they do not indicate on their face that they are disciplinary and they did not affect her compensation, work hours, duties or anything else about her job in a serious or material way. (Def. Brief. Doc. 25 at p. 19).

The Court has independently reviewed Saulsberry's August letter and both of Kirby's August letters. The August 12, 2015 letter from Saulsberry simply admonished Plaintiff for leaving Wedowee Elementary school unattended during school hours and required her to notify the Human Resources office of her travels outside of Wedowee, Alabama during school hours. (Boyd Depo. Doc. 24-1 Ex. 6). In the August 17, 2015

letter, Kirby counseled Plaintiff about her professionalism when requesting to meet with him.  (Boyd Depo. Doc. 24-1, Ex. 9).  In the August 18, 2015 letter, Kirby advised Plaintiff that her suspension of a Pre-K student for his father's tardiness did not comply with policy. (Boyd Depo. Doc. 24-1, Ex. 11).  As, explained hereafter, the Court concludes the letters are not adverse employment actions because they did not result in "some tangible, negative effect on the plaintiff's employment."  S*hotz,* 344 F. 3d at 1182.

The Court has also independently reviewed the Employee Improvement Plan which set out expectations for Plaintiff's employment.  Plaintiff argues that this Plan and the letters include "requirements that Plaintiff alter her behavior" because Plaintiff was required to let the Central Office know if she was leaving school during school hours and also to attend training for new supervisors.  (Pls. Brief Doc. 35 at p. 34).  Other than her claim that she felt insulted for having to attend training for new supervisors, Plaintiff fails to adduce any evidence that the Employee Improvement Plan had a "tangible, negative effect" on her employment." *Shotz,* 344 F. 3d at 1182.  Indeed, Plaintiff stated that she "enjoyed the professional development" even though she was the only Principal required to attend.  (Boyd Depo. 24-1 at p. 138:16-139:10).  Moreover, Plaintiff has pointed to no evidence demonstrating that the Employee Improvement Plan affected her salary or job status. *See Morales,* 446 Fed. Appx. at 183.

Following these communications, Plaintiff continued as the Principal of Wedowee with no change in the conditions of that position, except for the minor requirements that she report her absence to supervisors and attend training.  Also, even though these letters

and the Employee Improvement Plant were kept on file at the Central Office and hand-delivered to Plaintiff, there is no evidence that any actions were taken against Plaintiff as a result of these communications.   Indeed, Plaintiff has pointed to no evidence demonstrating that these letters affected her salary or job status.  *See Morales,* 446 Fed. Appx. at 183 (No adverse employment action where Plaintiff failed to show "the documentation affected her salary or job status").   Moreover, the Court concludes Plaintiff failed to demonstrate that these letters, much like job performance memoranda, caused her "any present or foreseeable future economic injury."  *Davis,* 245 F. 3d at 1239-40.

Plaintiff also fails to demonstrate how being required to notify her supervisor of her intent to leave during school hours had a "tangible, negative effect" on her employment." *Shotz,* 344 F. 3d at 1182.  Indeed, this requirement appears to be a reasonable management tool in an academic setting involving the care of young children and imposes only a small planning and notification requirement on Plaintiff to ensure her Elementary School is attended at all times. Thus, Plaintiff has failed to demonstrate this requirement rises to the level of an adverse action which is "material and significant and not trivial."  *Morales,* 446 Fed. Appx. at 183.   Further, Plaintiff testified that questions about the budget for this position kept her from immediately accepting Jacobs 2017 offer of this job to Plaintiff. (Boyd Depo. Doc. 24-1; 125:14-127:14).  Moreover, Plaintiff formalized her EEOC charge following these events in September, 2015 which demonstrates that this conduct did not deter Plaintiff "from pursuing a pending charge of discrimination or making a new one."

*Crawford,* 529 F. 3d at 974.  Thus, the Court concludes Plaintiff has failed to demonstrate that these documents were adverse employment actions.

**Removal from Pre-K Director position in August 2015**

Defendant argues Plaintiff's removal from the Pre-K Director position at Wedowee Elementary in August 2015 was not an adverse action because it was an unpaid position. (Doc. 25 at p. 19-20).  Conversely, Plaintiff argues that removal from this position was an adverse action because even though it was unpaid, the position had its own duties and responsibilities and prestige.  (Doc. 35 at p. 36).  The Eleventh Circuit has spoken plainly on the loss of "prestige" argument concluding it, without more, is typically not sufficient to demonstrate an adverse employment action where Plaintiff complained of a change in work assignment.  *Davis,* 245 F. 3d at 1244 (Summary judgment granted on Plaintiff's change in work assignment claim even where Plaintiff "felt some blow to his professional image").

Indeed, Plaintiff's removal from the Pre-K Directorship, an unpaid position, is analogous to a change in work assignments which "do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes.") *Id.* at 1245 quoting *Mungin v. Katten Muchin & Zavis*, 116 F. 3d 1549, 1557 (D.C. Cir. 1997).  Further, Plaintiff explained that questions about the budget for this position kept her from immediately accepting Jacobs 2017 offer of this job to Plaintiff.  (Boyd Depo. Doc. 24-1; 125:14-127:14).   Moreover, Plaintiff formalized her EEOC charge in September, 2015 which demonstrates that removal from this position did not deter Plaintiff

"from pursuing a pending charge of discrimination or making a new one." *Crawford,* 529 F. 3d at 974.  Accordingly, the Court concludes that Plaintiff has failed to meet her burden to establish that removal from the Pre-K Directorship position was an adverse action.

**Exclusion from hiring decisions in the Spring of 2017**

Plaintiff alleges that the current Superintendent, John Jacobs, retaliated against her by excluding her from conversations in 2017 where he offered a teacher at Wedowee Elementary another job at Wadley High School and excluded her from the hiring decision involving a P.E. teacher at Wedowee in 2016.   Plaintiff argues that as Principal at Wedowee her input was important to personnel issues involving her school and this conduct was another step in Defendant stripping away her authority and privileges.  (Doc. 35 at p. 42). First, Defendant argues that Plaintiff fails to establish a prima facie case of retaliation on this claim because her exclusion from these conversations was not an adverse employment action.  Second, Defendant argues that these events are too remote in time from the filing of her EEOC charge in September 2015 to establish causation.  (Doc. 25 at pp. 21-22).  *Morales,* 446 Fed. App'x. at 183 (Four month separation between adverse action and protected activity too remote to establish causation.)

The Court agrees.  Indeed, the Court concludes that Jacobs failure to include Plaintiff in a discussion or meeting involving personnel issues is not adverse employment action because it did not result in "some tangible, negative effect on the plaintiff's employment."  S*hotz,* 344 F. 3d at 1182.  Moreover, the Court concludes that the time between these personnel conversations in 2016 and 2017 and Plaintiff's protected activity

in September 2015 is too distant to establish causation.  *Morales,* 446 Fed. Appx. at 183.

Further, the Court is persuaded that Plaintiff has failed to demonstrate that "retaliatory

animus" was a factor motivating these actions.  *Brown,* 597 F. 3d at 1182.  Accordingly,

the Court concludes that Plaintiff fails to meet her prima facie burden on this retaliation

claim.

**Denial of a five-year contract in the Summer of 2016**

Plaintiff claims that in the summer of 2016, Kirby offered all of the other RCS

Principals five-year employment contracts and that she was not offered one in retaliation

for her protected activities.  (Boyd Depo. Doc. 24-1; 147:10-148:12).  Jacobs testified that

the Board approved five-year contracts for five principals in July and August of 2016.

(Jacobs Affid, Doc. 24-4 ¶ 20).  Neither Plaintiff, nor Darren Angline, the white male

Principal at Randolph County High School were offered new contracts.  (Jacobs Affid.

Doc. 24-4 ¶ 20).  Defendant argues that because this denial occurred almost a year

following Plaintiff's protected activity, Plaintiff can not establish causation.  *Morales,* 446

Fed. Appx. at 183. (No causal connection established where alleged retaliation occurred

more than four months following the protected activity).

The Court recognizes that under some circumstances such an action might be

viewed as having a "tangible, negative effect on the plaintiff's employment."  S*hotz,* 344

F. 3d at 1182.  However, the undisputed evidence proves that the Board did not offer a five

year contract to both Plaintiff and a white male Principal, the Court concludes Plaintiff fails

to meet her burden of demonstrating "retaliatory animus" was a factor motivating this

decision.  *Brown,* 597 F. 3d at 1182 (Citation omitted).   Accordingly, the Court concludes that Plaintiff fails to meet her prima facie burden of establishing causation on this retaliation claim.  *Id.*

**Human Resources Director position in November 2016**

Plaintiff claims that she was denied the Human Resources Director position in retaliation for her complaint of discrimination.  RCS posted a job notice for this position on November 18, 2016.  (Jacobs Affid. Doc. 24-4 ¶ 21 Ex. I).  Plaintiff applied for the position, was interviewed by the Employment Committee, and was ranked third by the Committee for the position behind two white candidates. (Johnson Affid. Doc. 24-2 ¶ 32 Ex. G).   The Board chose to hire Kelly, a white female recommended first by the Committee, in part, because she had performed the job previously.  (Johnson Affid. Doc. 24-2 ¶33).  Again, Defendant argues that this action is too remote from Plaintiff's protected activity for causation to be established.  *Morales, id.*  While the Court credits Defendant's argument as to Plaintiff's failure to establish causation, the Court will assume Plaintiff has met her prima facie burden on this claim.

The Board stated it hired Kelly over Plaintiff, in part, because she had performed the job previously. (Johnson Affid. Doc. 24-2 at ¶33).  Thus, the Board has presented a legitimate non-discriminatory reason for its decision and  the burden shifts back to Plaintiff to "produce evidence casting doubt" on Defendant's reasons.  *Carter,* 132 F. 3d at 644. Plaintiff argues that this explanation is a pretext for discrimination because the job vacancy posting does not list "HR experience" as a qualification and the Summary Rationale Form

does not identify Plaintiff's lack of experience as the reason for the Board's decision to hire Kelly over Plaintiff.  (Doc. 35 pp. 40-41).  Rather, the Summary Rationale Form states "[t]he board requested she [Boyd] be in the top 3", but that "[t]"he committee felt that Dr. Boyd was not a fit for this particular position.  She has a passion for students." (Johnson Affid. Doc.  24-2; Ex. G).

The Eleventh Circuit has stated that in determining pretext a court must consider all the evidence of record to determine whether Plaintiff "has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct."  *Crawford,* 529 F. 3d at 967.  In the instant case, Plaintiff argues that she has presented evidence of pretext based on the failure of the Committee to explain more fully in the Summary Rationale Form reasons why Plaintiff, a black candidate, was ranked behind Kelly, a white candidate.  This argument alone fails to meet the Plaintiff's evidentiary burden to establish pretext. *See Carter,* 132 F. 3d at 644.  Indeed, since Plaintiff offers no evidence of pretext, Plaintiff fails to carry her burden under *McDonnell Douglas Corp,* 411 U.S. at 802-804.  Accordingly, the Court concludes that Plaintiff fails to carry her burden under *McDonnell Douglas,* 411 U.S. at 802-804 on this retaliation claim.

**Alleged Retaliation events viewed as a whole**

Plaintiff argues that the alleged adverse actions taken against Plaintiff are not "isolated instances", but rather are a "progression and continuation of retaliation" and sufficiently proximate to each other to establish her prima facie burden of causation.  She

argues that because no other Principal was treated similarly and because she was not treated this way prior to making claims of discrimination that she has met her burden of establishing a claim for retaliation. (Doc. 35 p. 39). However, based upon the Court's review of the entire record, including each claim for retaliation, the Court concludes that Plaintiff's arguments fails.

Plaintiff points to *Lamar v. State of Alabama Dep't of Conservation*, 2017 WL 517824 (M.D. Ala. February 8, 2017) as support for her claims of retaliation. That case, however, is factually distinct from the instant action. In *Lamar,* the plaintiff submitted evidence in the form of deposition testimony contradicting the defendant's stated reason for firing Plaintiff's daughter two months after learning that Plaintiff made claims of discrimination. Indeed, Defendant stated that the Lamar's daughter's termination was because of "[j]ob abandonment, 24 plus hours, no contact no calling in." *Lamar,* 2017 WL 517824 at *3. However, by deposition a co-employee testified that Defendant changed the schedule and told her that she would be fired if she called Lamar's daughter to notify her of the change. Id. at *4. The Court denied Defendant's motion for summary judgment on the retaliation claims on the basis of the co-employee's testimony finding that "plaintiff proffer[ed] sufficient evidence to create an issue of fact whether the reasons were pretextual." *Id.*

In the case at bar, Plaintiff points to no affirmative evidence from which a reasonable jury could draw an inference that any of the alleged acts of retaliation resulted from Plaintiff's claims of discrimination. Rather, Plaintiff simply argues that because no

other Principal was treated similarly and she was not treated this way prior to making claims of discrimination that she has met her burden of establishing a claim for retaliation. The Court concludes that these arguments without more are insufficient under the law to create a genuine issue of material fact. *Celotex,* 477 U.S. at 322. Moreover, the court does not credit Plaintiff's implicit argument that stringing together meritless claims of retaliation over a period of twelve to eighteen months creates a question of fact as to causation. Accordingly, the Court concludes that Defendant's Motion for Summary Judgment is due to be granted.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the Defendant's Motion for Summary Judgment (Doc. 23) be GRANTED.

ORDERED that the Parties shall file any objections to this Recommendation on or before **October 18, 2017.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon

grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 4th day of October, 2017.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE