IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

SHAWANNA BOYD,                          *

     Plaintiff,                    *

vs.                                     *
                                   CASE NO. 3:16-CV-546-CDL-TFM

RANDOLPH COUNTY BOARD OF                *
EDUCATION,
                                 *

     Defendant.                    *

_____  *

O R D E R

Plaintiff Shawanna Boyd brought this race discrimination and
retaliation action against her employer, the Randolph County Board
of Education ("School District"), under 42 U.S.C. § 1981 and Title
VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*
("Title VII"). The School District moved for summary judgment on
all of Boyd's claims, and the Magistrate Judge issued a Report and
Recommendation recommending that the summary judgment motion be
granted. R. & R., ECF No. 44. The Court reviewed this matter *de
novo* and concludes that summary judgment should be granted on all
of Boyd's claims except her retaliation claim based on the removal
of her pre-kindergarten director duties. Accordingly, the
Magistrate's recommendation to grant summary judgment is adopted
as modified for the reasons explained below, except as to that one
claim.

## STANDARD OF REVIEW

The Court designated the Magistrate to submit proposed findings of fact and recommendations for the disposition of any pretrial motions in this case. The Magistrate recommended that Defendant Randolph County Board of Education's summary judgment motion be granted. *See generally* R. & R. Plaintiff Shawanna Boyd filed an objection to the Magistrate's recommendation. Pl.'s Obj. to Recommendation of the Magistrate, ECF No. 45. The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). For those findings and recommendations to which objections were not asserted, the district courts generally conduct a plain error review. *Cf. United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983) ("The failure to object to the magistrate's findings of fact prohibits an attack on appeal of the factual findings adopted by the district court except on grounds of plain error or manifest injustice."). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Plaintiff Shawanna Boyd does not appear to object to any of the Magistrate's factual findings. Rather, her objections are based on how the Magistrate applied the law to the facts. Therefore, the Court adopts the findings of fact as set forth by the Magistrate and discusses the relevant facts below.

DISCUSSION

**I.  Boyd's Race Discrimination Claims**

Title VII and § 1981 both prohibit employment discrimination on the basis of race. *See* 42 U.S.C. § 2000e-2(a)(1) (prohibiting racial discrimination with respect to the terms and conditions of employment); 42 U.S.C. § 1981(a) (prohibiting racial discrimination in the making and enforcement of contracts). To survive summary judgment in a race discrimination case under either statute, the plaintiff must produce enough evidence for a

reasonable juror to conclude that her employer took an adverse employment action against her that was motivated by her race. *Cf. Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (noting that Title VII and § 1981 "have the same requirements of proof and use the same analytical framework" for discrimination claims). Boyd contends that the School District denied her two promotions because of her race: the promotion to Special Education Coordinator and the promotion to Curriculum Coordinator. The Court will address each claim in turn.

### A.    Promotion to Special Education Coordinator

Boyd, who is black, claims that she was not promoted to Special Education Coordinator because of her race. The Magistrate concluded that Boyd did not point to enough evidence to create a genuine fact dispute on this claim. Boyd asserts that the Magistrate erred in two ways. First, Boyd argues that the Magistrate erred in finding that she had not presented direct evidence of discrimination. Second, Boyd contends that the Magistrate erred in concluding that she had not presented sufficient evidence to survive summary judgment under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

Direct evidence of discrimination is "evidence from which a reasonable trier of fact could find, more probably than not, a

causal link between an adverse employment action and a protected personal characteristic." *Wright v. Southland Corp.*, 187 F.3d 1287, 1298 (11th Cir. 1999).[1] In other words, direct evidence is "evidence which reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999)).

Boyd contends that the following evidence is "direct evidence" of race discrimination: (1) she was not considered for the Special Education Coordinator position until she complained; (2) the application process was restarted after the special education committee determined that the original three finalists did not have enough experience with the state's special education paperwork; and (3) the job description was modified to remove the certification of administration/supervision requirement and add the requirement that candidates to have knowledge of special education laws, process, and the computer tracking system. None of these statements reflects a racially discriminatory attitude correlating to the Special Education Coordinator decision. The Magistrate did not err in concluding that this evidence is not direct evidence of discrimination.

---

[1] The *Wright* court provided several examples of direct evidence of race discrimination, including: (1) an employer's statement that he needed a black director and (2) a decisionmaker's statement that he wanted a greater white presence in a school. *Wright*, 187 F.3d at 1295-97.

Without direct evidence of discrimination, Boyd must prove her discrimination claim using the framework established in *McDonnell Douglas* and *Burdine*. *E.g., Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). Under that framework, the plaintiff must establish a prima facie case of discrimination. *Id.* If she does that, then the employer may articulate a legitimate nondiscriminatory reason (or reasons) for its employment decision. *Id.* If the employer proffers a legitimate nondiscriminatory reason for its decision, then the plaintiff must show that the proffered reason is a pretext for discrimination. *Id.*

Here, the Magistrate found that Boyd did not establish a prima facie case of discrimination. In the failure-to-promote context, a plaintiff may establish a prima facie case by showing that (1) she belonged to a protected class, (2) she was qualified and applied for a position her employer was seeking to fill, (3) she was rejected, and (4) the position was filled with a person outside her protected class. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005). It is undisputed that Boyd belonged to a protected class, that she was not promoted to Special Education Coordinator, and that the position was filled with a white person named Beth Bailey. The Magistrate concluded, however, that Boyd was not qualified for the position because she did not have a Master's Degree in Special Education, which was a

requirement for the position. Boyd did not submit evidence to demonstrate that a Master's Degree in Special Education was not a legitimate requirement for the Special Education Coordinator job. Therefore, Boyd was not qualified for the Special Education Coordinator job, and the School District is entitled to summary judgment on this claim.

Even if the Court were to conclude that a Master's Degree in Special Education was *not* actually required (as Boyd argues it was not), her claim still fails because she did not present enough evidence to show pretext. Boyd may demonstrate that the School District's reasons for hiring Bailey were pretextual by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the School District's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004)). "In the context of a promotion, 'a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position [s]he coveted.'" *Id.* at 1349 (first alteration in original) (quoting *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006)). And, "[a] plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact

motivated by race." *Id.* (quoting *Brooks*, 446 F.3d at 1163).
Finally, "a plaintiff must show that the disparities between the
successful applicant's and [her] own qualifications were 'of such
weight and significance that no reasonable person, in the exercise
of impartial judgment, could have chosen the candidate selected
over the plaintiff.'" *Id.* (*quoting Cooper v. S. Co.*, 390 F.3d 695,
732 (11th Cir. 2004)); *see also Ash v. Tyson Foods, Inc.*, 546 U.S.
454 (2006) (approving of this language from *Cooper*).

In this case, the School District presented evidence that the
original top three candidates for Special Education Coordinator
(which did not include Boyd) did not have sufficient knowledge of
special education laws, process, and the computer tracking system
to meet the School District's needs.[2] The School District also
presented evidence that it revised the qualifications to attract
more candidates with expertise in special education. Boyd did not
present evidence to rebut these proffered reasons for reposting
the Special Education Coordinator position. She also did not
present evidence to show that the disparities between Bailey's

---

[2] Boyd argues that because the employment committee's top candidate
during the first round was black, the School District must have been
engaging in race-based discrimination when it decided to repost the
position rather than hire any of the top three candidates (which did not
include Boyd). This argument ignores the evidence, which Boyd did not
dispute, that the special education committee recommended that *none* of
the three finalists (including two white applicants) be hired for the job
because they did not have sufficient familiarity with the state's special
education paperwork. So, to the extent Boyd is arguing that the
"qualifications disparity" was not her "*sole* basis for arguing pretext,"
the Court rejects that argument. *Vessels*, 408 F.3d at 772.

qualifications and her own were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen [Bailey] over [Boyd]." *Springer*, 509 F.3d at 1348 (quoting *Cooper*, 390 F.3d at 732). The School District presented evidence that Bailey was very familiar with what the state expected in terms of special education compliance; that she had experienced five state department special education monitoring cycles; that she had built a rapport with a many staff members and parents; that she helped with assessments of intellectually disabled students; and that she served on the state Autism Initiative. Boyd did not present evidence to suggest that her experience teaching special education for one year and her experience as an elementary school principal so outweighed Bailey's extensive special education experience that no reasonable person would have selected Bailey over Boyd. The Court thus finds that Boyd failed to create a genuine fact dispute on pretext, and the School District is entitled to summary judgment on Boyd's race discrimination claim based on the Special Education Coordinator promotion.

### B. Promotion to Curriculum Coordinator

Boyd claims that she was not promoted to Curriculum Coordinator because of her race. The Magistrate found that Boyd did not present sufficient evidence of pretext to rebut the School District's legitimate nondiscriminatory reason: the candidate

hired, Jennifer Braden, was better qualified for the position. The Court agrees. Boyd does not dispute that Braden was qualified for the job given her Bachelor of Arts in Political Science, Master's degree in Education, experience as a principal and assistant principal, and extensive experience as a teacher and media specialist. And, the employment committee found that Braden's interview revealed that she had a broader understanding of and vision for the job. Also, the committee believed that Braden's writing sample was better than Boyd's. Thus, the Court finds that Boyd did not present evidence to show that the disparities between Braden's qualifications and her own were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen [Braden] over [Boyd]." *Springer*, 509 F.3d at 1348 (quoting *Cooper*, 390 F.3d at 732). For this reason, Boyd failed to create a genuine fact dispute on pretext, and the School District is entitled to summary judgment on Boyd's race discrimination claim based on the Curriculum Coordinator promotion.

## II. Boyd's Retaliation Claims

Title VII prohibits an employer from retaliating against an employee because she "has opposed any practice made an unlawful employment practice" by Title VII or because she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.

42 U.S.C. § 2000e-3(a). Such retaliation is also prohibited under § 1981. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008) (holding that "§ 1981 encompasses claims of retaliation"). To prove a retaliation claim, the plaintiff must prove that her protected activity was the but-for cause of the alleged wrongful action. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation[.]"); *Jones v. Suburban Propane, Inc.*, 577 F. App'x 951, 954–55 (11th Cir. 2014) (per curiam) (applying *Nassar*'s but-for causation requirement in a § 1981 retaliation case). In the absence of direct evidence of retaliatory intent, the plaintiff may proceed under the *McDonnell Douglas* framework.

"A plaintiff establishes a prima facie case of retaliation by showing that: (1) she 'engaged in statutorily protected activity'; (2) she 'suffered a materially adverse action'; and (3) 'there was a causal connection between the protected activity and the adverse action.'" *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012) (quoting *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010)). If a plaintiff establishes a prima facie case of retaliation and the employer offers a legitimate non-retaliatory reason for its decision, then the plaintiff must "show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory

conduct." *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008) (quoting *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999)).

In July 2015, Boyd filed an internal grievance with the School District alleging race discrimination in the Special Education Coordinator promotion decision. And in September 2015, she filed a charge of discrimination with the Equal Employment Opportunity Commission. Boyd claims that the School District retaliated against her for making these complaints in a number of ways. There is no dispute for summary judgment purposes that Boyd's complaints were protected activity for purposes of a retaliation claim under Title VII and § 1981, but Boyd does argue that the Magistrate incorrectly determined that certain actions were not materially adverse and others were not causally related to the protected activity. The Court addresses each alleged instance of retaliation in turn.

A.   Letter Regarding Off-Campus Lunches

In August 2015, the School District's Human Resources Coordinator, Sherry Saulsberry, sent Boyd a letter notifying Boyd that the School District did not condone principals taking off-campus lunches during the school day unless they notified the Human Resources department in advance. The Magistrate concluded that the letter was not a materially adverse action. The Court agrees. "An action is materially adverse if it 'might have

dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Gate Gourmet, Inc.*, 683 F.3d at 1259 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Given that Boyd herself generally agreed with the School District's policy requiring a senior administrator like the principal to be at school during school hours, the Court finds that the letter is not a materially adverse action.[3] Even if it were, Boyd presented no evidence that the School District's proffered reason (explaining the School District's policy regarding off-campus lunches) was pretext for retaliation. Accordingly, the School District is entitled to summary judgment on this claim.

### B. August 17, 2015 and August 18, 2015 Counseling Letters

The School District's then-Superintendent, Rance Kirby, sent Boyd a letter dated August 17, 2015. In that letter, Kirby counseled Boyd about her professionalism in requesting and participating in a meeting. Kirby sent Boyd a second letter dated August 18, 2015. In that letter, Kirby admonished Boyd for suspending a pre-kindergarten child because the child's father was fifteen minutes late for pick-up. According to Kirby, the state's

---

[3] Boyd argues that other principals were permitted to leave school grounds without notifying Human Resources. The present record suggests that Boyd did not have an assistant principal to take the helm if she left school grounds, and Boyd did not point to evidence to show that other principals were similarly situated to her in that respect.

pre-kindergarten guidelines did not permit suspension under those circumstances.

The Magistrate concluded that the letters were not materially adverse actions, and Boyd did not specifically object to that finding. Even if she had, the Court is not convinced that such letters are materially adverse actions that might deter a reasonable employee from pursuing a charge of discrimination. Although the "materially adverse" standard for retaliation claims is "decidedly more relaxed" than the "serious and material change in the terms, conditions, or privileges of employment" standard applicable to discrimination claims, *Crawford v. Carroll*, 529 F.3d 961, 970-71, 973 (11th Cir. 2008), the harm must be "significant" and not "trivial," *Burlington*, 548 U.S. at 68. Boyd did not point to any evidence that the letters had a meaningful impact on her employment. Accordingly, the School District is entitled to summary judgment on Boyd's claims based on these two letters.

C.    Employee Improvement Plan

In August 2015, Kirby and Saulsberry placed Boyd on an Employee Improvement Plan. The Employee Improvement Plan had a number of requirements, some objective (*e.g.*, obtain supervisor's permission before leaving campus) and some subjective (*e.g.*, demonstrate professionalism to others). Boyd was the only principal who was placed on an Employee Improvement Plan, which Kirby considered to be the first step to a formal reprimand. If

14

Boyd failed to follow the Employee Improvement Plan, that failure could result in suspension or termination.

The Eleventh Circuit has concluded that an unfavorable performance review that affects an employee's eligibility for a merit pay increase is a materially adverse action for purposes of a retaliation claim. *Crawford*, 529 F.3d at 974. But a simple reprimand is not. *Rayner v. Dep't of Veterans Affairs*, 684 F. App'x 911, 915 (11th Cir. 2017) (per curiam) (finding that an admonishment and reprimand were not materially adverse because the plaintiff did "not point to any evidence that her pay or promotion prospects were negatively affected by the admonishment or the reprimand"); *Harris v. Fla. Agency for Health Care Admin.*, 611 F. App'x 949, 952 (11th Cir. 2015) (per curiam) ("A supervisor's statement that the plaintiff failed to perform his job duties sufficiently does not constitute an adverse employment action when nothing in the memorandum indicates that the plaintiff was disciplined."). Boyd did not point to any evidence that the Employee Improvement Plan, which was not even considered to be a formal reprimand, had a meaningful impact on her employment. The Court thus finds that the School District is entitled to summary judgment on Boyd's claims based on the Employee Improvement Plan.

D.    New Supervisor Training Requirement

In August 2015, Kirby required Boyd to attend training for new supervisors. Boyd was the only principal who was required to

attend the training. She found the training insulting because she was not a new supervisor, and she believes that the training contributed to a loss of prestige because other teachers and principals saw that she was in the training course. There is no evidence that the other teachers and principals attributed a negative meaning to Boyd's attendance, and the Court, like the Magistrate, is not convinced that the perceived slight amounts to a materially adverse action for purposes of a retaliation claim. Accordingly, the School District is entitled to summary judgment on Boyd's claims based on the training requirement.

### E. Removal from Pre-K Director Position

In 2014, Boyd applied for and received a grant to start the first pre-kindergarten program in Randolph County. She served as director of the program, though she did not receive any extra compensation for performing those duties. When she wrote the grant application for the 2015-2016 school year, Boyd did include in the budget $10,000.00 as compensation for the director of the program. It is not clear from the present record whether that portion of the grant application was approved.

In August 2015, Boyd was removed from the pre-kindergarten director position without explanation.[4] Saulsberry, the Human

---

[4] In its reply brief, the School District argued for the first time that the change was made to centralize the function into the Central Office. First, the evidence the School District cited in support of this statement does not actually support the statement. Second, "[a]rguments raised for the first time in a reply brief are not properly before the

Resources Coordinator, took over the pre-kindergarten director responsibilities and did not receive any extra pay for it. Braden, the Curriculum Coordinator, currently performs the pre-kindergarten director responsibilities and does not receive any extra pay for it. Although the School District did offer to reinstate these duties to Boyd in 2017, there is a fact dispute on why Boyd did not accept the position at that time.

The Magistrate concluded that since Boyd did not lose any pay in connection with the removal of her pre-kindergarten director duties, she did not suffer a materially adverse action. The Magistrate also found that because Boyd finalized her charge of discrimination with the EEOC after her pre-kindergarten director duties were removed, the removal of these duties must not have been materially adverse.

"Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances."'" *Burlington*, 548 U.S. at 71 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). The Supreme Court emphasized that it is an objective standard, not a subjective one. *Id.* at 68. Given this objective standard, the Court finds it

---

reviewing court." *United States v. Oakley*, 744 F.2d 1553, 1556 (11th Cir. 1984) (per curiam).

inappropriate to place any significance on the fact that Boyd persisted with her EEOC charge after the removal of the pre-kindergarten director duties. To find otherwise would effectively eliminate retaliation claims in all cases where an employee continued to pursue a charge of discrimination despite the employer's retaliatory acts.

The next question is whether the removal of the pre-kindergarten director duties was a materially adverse action that might dissuade a reasonable employee from complaining about discrimination. In *Burlington*, for example, the Supreme Court noted that work reassignments could be materially adverse even if there was no difference in pay or job title; in that case, the reassignment from the "better" job of forklift operator to the "more arduous and dirtier" job of track laborer could be a materially adverse employment action—and that question was for the jury. *Id.* at 71. In this case, the Court finds that a fact question exists on this issue. Based on the present record, a jury could conclude that Boyd started and nurtured the pre-kindergarten program that was housed in her elementary school. A jury could also conclude that shortly after Boyd complained of discrimination, the director role was taken away from her without explanation and given to a human resources employee who did not have an educator role. And, a jury could conclude that removing Boyd's pre-kindergarten duties under these circumstances was a

materially adverse action that might have dissuaded a reasonable employee from complaining of discrimination. Summary judgment is therefore inappropriate on this claim.

>     F.    Refusal to Offer Five-Year Contract

In July or August of 2016, the School District approved five-year contracts for five of its principals. Boyd and one other principal did not receive five-year contracts. The Magistrate concluded that Boyd did not present enough evidence to create a genuine fact dispute on causation. The Court agrees. Although "[t]he burden of causation" for a retaliation claim "can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action[,] . . . mere temporal proximity, without more, must be 'very close.'" *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (internal citation omitted) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, (2001)). "A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." *Id.* So, without "other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Id.*

In this case, nearly a year elapsed between Boyd's protected conduct in July and September 2015 and the contract decision in the summer of 2016. Boyd offered no other evidence tending to

show causation, although she does argue that there was a pattern of retaliatory acts leading up to the contract decision and that this "pattern" establishes causation. But, as discussed above, most of the employment decisions Boyd complains about—which occurred within a short window that was months before the contract decision—are not actionable retaliation. Therefore, the Court finds that Boyd failed to create a genuine fact dispute on causation regarding the contract decision. The School District is entitled to summary judgment on this claim.

### G.   Exclusion from Hiring Decisions

In the summer of 2016, Boyd was excluded from the hiring process for a physical education teacher who was hired to split time between Boyd's school and another school. Although the principal of the other school was involved in the interviews and the hiring decision, Boyd was not. And, in the spring of 2017, John Jacobs, the new Superintendent, and the principal of another school attempted to recruit one of Boyd's teachers to the other school. Boyd was not involved in that conversation. The teacher declined the offer.

The Magistrate found that Boyd did not present sufficient evidence of causation. The Court agrees. Nearly a year elapsed between Boyd's protected conduct in July and September 2015 and her exclusion from hiring decisions in the summer of 2016. Boyd

offered no other evidence tending to show causation, so the School District is entitled to summary judgment on this claim.

### H.   Human Resources Coordinator Position

The School District's Human Resources Coordinator position became vacant in late 2016, and the vacancy was posted.  Boyd and several other applicants were selected for interviews.  The School District's employment committee recommended Mary Kelly, who is white, for the job because she had performed the job before.  Boyd was the committee's third choice, but the committee also stated that Boyd was not a fit for the position.  Jacobs, the new Superintendent, followed the employment committee's suggestion and recommended Kelly for the position; the school board voted to hire Kelly.  Boyd does not dispute that Kelly is qualified for the position.

Boyd argues that the decision to hire Kelly instead of her for the position was retaliatory, although the Magistrate's recommendation and Boyd's objections also frame this claim as a discrimination claim.  Boyd did not point to any evidence that Jacobs, who was a brand new Superintendent when he followed the employment committee's suggestion in recommending Kelly, had a retaliatory animus toward Boyd based on her protected activity that took place more than a year earlier when he was not the Superintendent.  Boyd's retaliation claim based on this decision thus fails.

To the extent that Boyd claims that this decision was also discriminatory, that claim fails too. Boyd does not dispute that Kelly was qualified for the position or that Kelly had prior experience as a human resources coordinator. The Court thus finds that Boyd did not present evidence to show that the disparities between Kelly's qualifications and her own were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen [Kelly] over [Boyd]." *Springer*, 509 F.3d at 1348 (quoting *Cooper*, 390 F.3d at 732). For this reason, Boyd failed to create a genuine fact dispute on pretext, and the School District is entitled to summary judgment on Boyd's race discrimination claim based on the denial of the Human Resources Coordinator position.

CONCLUSION

For the reasons set forth above, the Court adopts the Magistrate's recommendation to grant summary judgment as to all of Boyd's claims except her retaliation claim based on the 2015 removal of her pre-kindergarten director duties. The Court denies summary judgment as to that claim.

IT IS SO ORDERED, this 20th day of December, 2017.

S/Clay D. Land
_____
CLAY D. LAND
U.S. DISTRICT COURT JUDGE